**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*

PAUL K. JOSEPH (287057)
*paul@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:     (619) 798-2006
Facsimile:     (480) 247-4553

***Counsel for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY BACKUS, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>GENERAL MILLS, INC. and GENERAL MILLS SALES, INC.,<br><br>        Defendants. | Case No:<br>Pleading Type: Class Action<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, ABATEMENT OF NUISANCE, VIOLATIONS OF THE UNFAIR COMPETITION LAW, AND BREACH OF IMPLIED WARRANTY**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

# **TABLE OF CONTENTS**

I.      JURISDICTION AND VENUE ................................................................................... 1

II.     INTRADISTRICT ASSIGNMENT .............................................................................. 1

III.    NATURE OF THE ACTION ........................................................................................ 1

IV.     PARTIES ..................................................................................................................... 2

V.      NATURE OF TRANS FAT ......................................................................................... 2

        A.      There is a Scientific Consensus That Trans Fat is Extremely Harmful ................... 3

        B.      Artificial Trans Fat Is so Inherently Dangerous it Has Been Banned by an
                Increasing Number of American and European Jurisdictions ................................. 5

        C.      The Artificial Trans Fat in the TF Baking Mixes Causes Cardiovascular Disease ............. 7

        D.      The Artificial Trans Fat in the TF Baking Mixes Causes Type-2 Diabetes ........................ 9

        E.      The Artificial Trans Fat in the TF Baking Mixes Causes Breast, Prostate, and
                Colorectal Cancer ........................................................................................ 10

        F.      The Artificial Trans Fat in the TF Baking Mixes Causes Alzheimer's Disease and
                Cognitive Decline ....................................................................................... 11

        G.      The Artificial Trans Fat in the TF Baking Mixes Causes Organ Damage ...................... 12

VI.     PLAINTIFF'S PURCHASES OF THE TRANS FAT BAKING MIXES ................................... 12

VII.    THE TF BAKING MIXES UNNECESSARILY CONTAIN PHO AND ARTIFICIAL
        TRANS FAT ............................................................................................................... 13

VIII.   DEFENDANTS' PRACTICES ARE "UNFAIR" WITHIN THE MEANING OF THE
        CALIFORNIA UNFAIR COMPETITION LAW .......................................................... 13

IX.     DEFENDANTS' PRACTICES ARE "UNLAWFUL" WITHIN THE MEANING OF
        THE CALIFORNIA UNFAIR COMPETITION LAW ................................................. 14

X.      INJURY ...................................................................................................................... 14

XI.     CLASS ACTION ALLEGATIONS ............................................................................. 15

XII.    CAUSES OF ACTION ............................................................................................... 17

        First Cause of Action .............................................................................................. 17

        Second Cause of Action .......................................................................................... 18

        Third Cause of Action ............................................................................................. 19

        Fourth Cause of Action ........................................................................................... 19

XIII.   PRAYER FOR RELIEF ............................................................................................. 20

i

Plaintiff Troy Backus, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendants General Mills, Inc. and General Mills Sales, Inc. (collectively "General Mills" or "Defendants"), and upon information and belief and investigation of counsel, alleges as follows:

## I.     JURISDICTION AND VENUE

1.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the class defined herein reside in states other than the state of which Defendants reside.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff resides in and suffered injuries, as a result of Defendants' acts, in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendants: (1) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets of this District through the distribution and sale of their products in this District; and (2) are subject to personal jurisdiction in this District.

## II.     INTRADISTRICT ASSIGNMENT

3.     This civil action arises out of the events and omissions of Defendant General Mills, which occurred in Marin County, California. Pursuant to Civil Local Rule 3-2(c), this action should be assigned to the San Francisco or Oakland Division. Plaintiff requests the San Francisco Division as it is closer to his home in Marin County.

## III.     NATURE OF THE ACTION

4.     Defendants manufacture, distribute, and sell a variety of baking mix products (collectively "the Trans Baking Mixes" or "TF Baking Mixes") containing partially hydrogenated oil ("PHO"), a food additive banned in many parts of the world because it contains artificial trans fat, a toxic carcinogen for which there are many safe and commercially acceptable substitutes.

5.     Plaintiff Troy Backus repeatedly purchased and consumed the Trans Fat Baking Mixes during the Class Period defined herein.

6.     Although there are safe, low-cost, and commercially acceptable alternatives to artificial

trans fat, including those used in competing brands, Defendants unfairly elect *not* to use those substitutes in the Trans Fat Baking Mixes in order to increase profit at the expense of consumer health.

7.     This action is brought to remedy Defendants' unfair and unlawful conduct. On behalf of the class defined herein, Plaintiff seeks an order compelling Defendants to, *inter alia*: (1) cease using artificial trans fat as an ingredient in the Trans Fat Baking Mixes and (2) award Plaintiff and the Class restitution.

## IV.   **PARTIES**

8.     Defendant General Mills, Inc. is a Delaware corporation with its principal place of business in Minneapolis. General Mills owns, manufactures, and sells the TF Baking Mixes.

9.     Defendant General Mills Sales, Inc. is a Delaware corporation with its principal place of business in Minneapolis. General Mills Sales distributes the TF Baking Mixes.

10.     Plaintiff Troy Walker is a resident of Marin County, California who repeatedly purchased the TF Baking Mixes for personal and household consumption.

## V.   **NATURE OF TRANS FAT**

11.     Artificial trans fat is manufactured via an industrial process called partial hydrogenation, in which hydrogen atoms are added to normal vegetable oil by heating the oil to temperatures above 400˚F in the presence of ion donor catalyst metals such as rhodium, ruthenium, and nickel.[1] The resulting product is known as partially hydrogenated oil, or PHO, which is the main source of trans fat in the American diet and used in dangerous quantities in the TF Baking Mixes.

12.     PHO was invented in 1901 and patented in 1902 by German chemist Wilhelm Normann. PHO molecules chemically differ from the natural fat molecules in other food products.[2]

13.     Natural fat, except the trace amounts of natural trans fat from ruminant animals, comes in

---

[1] *See* Alice H. Lichtenstein, *Trans Fatty Acids, Plasma Lipid Levels, and Risk of Developing Cardiovascular Disease*, 95 Circulation 2588, 2588-90 (1997).

[2] *See* Alberto Ascherio et al., *Trans Fatty Acids & Coronary Heart Disease*, 340 New Eng. J. Med. 94, 94-8 (1999). *See also* Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About *Trans* Fat Nutrition Labeling (Update 2006) (2003), *available at* http://www.cfsan.fda.gov/%7Edms/qa*trans*2.html.

two varieties: (1) fats that lack carbon double bonds ("saturated fat") and (2) fats that have carbon double bonds with the hydrogen atoms on the same side on the carbon chain ("cis fat"). Trans fat, however, has double bonds on opposite sides of its carbon chain.



14.    PHO was initially a "wonder product" attractive to the packaged food industry because it combines the low cost of unsaturated cis fat with the flexibility and long shelf life of saturated fat. Like cis fat, PHO is manufactured from low-cost vegetable and legume oils,[3] while saturated fat is derived from relatively expensive animal and tropical plant sources.[4] Given its versatility, ten years ago PHO was used in 40% of processed packaged foods.[5] Now, given its toxic properties, few food companies continue to use PHO. Defendants, however, have decided not to follow their more responsible peers and cease using PHO, instead unfairly placing their profits over the health of people like Plaintiff.

### A.    There is a Scientific Consensus That Trans Fat is Extremely Harmful

15.    PHO causes cardiovascular heart disease, diabetes, cancer, Alzheimer's disease, and accelerates cognitive decline in diabetics.

16.    There is "no safe level" of artificial trans fat intake.[6]

17.    In addition, "trans fatty acids are not essential and provide no known benefit to human

---

[3] *e.g.*, corn oil, soybean oil, and peanut oil.

[4] *e.g.*, butter, cream, tallow, palm, and coconut oil.

[5] Mary Carmichael, *The Skinny on Bad Fat*, Newsweek, Dec. 1, 2003, at 66. *See also* Kim Severson, *Hidden Killer. It's Trans Fat. It's Dangerous. And It's In Food You Eat Every Day*, S.F. Chron., Jan. 30, 2002.

[6] Food & Nutrition Bd., Inst. of Med., *Dietary Reference Intakes For Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids* (2005).

health."[7] Thus, while "the [Institute of Medicine] sets tolerable upper intake levels (UL) for the highest level of daily nutrient intake that is likely to pose no risk of adverse health effects to almost all individuals in the general population[,] . . . the IOM does **not** set a UL for trans fatty acid because **any** incremental increase in trans fatty acid intake increases the risk of CHD."[8]

18.     Dariush Mozaffarian of Harvard Medical School writes in the New England Journal of Medicine:

> [F]rom a nutritional standpoint, the consumption of trans fatty acids results in considerable potential harm but no apparent benefit. . . . Thus, complete or near-complete avoidance of industrially produced trans fat—a consumption of less than 0.5 percent of the total energy intake—may be necessary to avoid adverse effects and would be prudent to minimize health risks.[9]

19.     Today there is no question about the scientific consensus on trans fat. Dr. Julie Louise Gerberding, former director of the United States Centers for Disease Control and Prevention, writes:

> The scientific rationale for eliminating exposure to artificial trans fatty acids in foods is rock solid. There is no evidence that they provide any health benefit, and they are certainly harmful. These compounds adversely affect both low- and high-density lipoprotein cholesterol levels and increase the risk for coronary heart disease, even at relatively low levels of dietary intake. Gram for gram, trans fats are far more potent than saturated fats in increasing the risk for heart disease, perhaps because they also have pro-inflammatory properties and other adverse effects on vascular endothelium. The strong evidence of harm motivated the Institute of Medicine to issue recommendations that the intake of trans fats be minimized and prompted the [FDA]

---

[7] Food Labeling; Health Claim; Phytosterols and Risk of Coronary Heart Disease; Proposed Rule, 75 Fed. Reg. at 76542 (Dec. 8, 2010).

[8] *Id.* (emphasis added).

[9] Dariush Mozaffarian et al., *Trans Fatty Acids and Cardiovascular Disease*, 354 N. Engl. J. Med. 1608-09 (2006).

to require the addition of information about trans fat content to food labels beginning in 2006. Eliminating exposure to these dangerous fats could have a powerful population impact—potentially protecting 30,000 to 100,000 Americans from death related to heart disease each year.[10]

20.     Dr. Mozaffarian further writes:

Given the adverse effects of trans fatty acids on serum lipid levels, systemic inflammation, and possibly other risk factors for cardiovascular disease and the positive associations with the risk of CHD, sudden death from cardiac causes, and possibly diabetes, the potential for harm is clear. The evidence and the magnitude of adverse health effects of trans fatty acids are in fact far stronger on average than those of food contaminants or pesticide residues, which have in some cases received considerable attention.[11]

21.     Given its nature as an artificial chemical not naturally found in any food and the considerable harm it that causes to human health, Dr. Walter Willett, also at Harvard Medical School, finds the most direct analogue of trans fat to be not any natural fat but contaminants such as pesticides. He states that the addition of artificial trans fat to food by companies like General Mills "is a food safety issue . . . this is actually contamination."[12]

**B.     Artificial Trans Fat Is so Inherently Dangerous it Has Been Banned by an Increasing Number of American and European Jurisdictions**

22.     In 2008, California became the first state to ban all restaurant food with artificial trans fat, a law affecting approximately 88,000 eating establishments. Trans fats now may not be served in

---

[10] Julie Louise Gerberding, *Safer Fats for Healthier Hearts: The Case for Eliminating Dietary Artificial Trans Fat Intake*, 151 Ann. Intern. Med., 137-38 (2009).

[11] Dariush Mozaffarian et al., *Trans Fatty Acids and Cardiovascular Disease*, 354 N. Engl. J. Med. 1601-13 (2006).

[12] Rebecca Coombes, *Trans fats: chasing a global ban*, 343 British Med. J. (2011).

California's schools or restaurants in an amount greater than half a gram per serving.[13]

23. New York City banned trans fat in its 20,000 food establishments in 2006. Similar laws exist in Philadelphia; Baltimore; Stamford, Connecticut; and Montgomery County, Maryland.

24. A 2004 Danish law restricted all foods to fewer than 2 percent of calories from artificial trans fat. Switzerland made the same restriction in 2008.[14]

25. After conducting a surveillance study of Denmark's trans fat ban, researchers concluded the change "did not appreciably affect the quality, cost or availability of food" and did not have "any noticeable effect for the consumers."[15]

26. Similar bans have been introduced in Austria, Hungary and Switzerland. Brazil, Argentina, Chile, and South Africa have all taken steps to reduce or eliminate trans fats from food.[16]

27. In 2006, a trans fat task force co-chaired by Health Canada and the Heart and Stroke Foundation of Canada recommended capping trans fat content at 2 percent of calories for tub margarines and spreads and 5 percent for all other foods. On September 30, 2009, British Columbia became the first province to impose these rules on all restaurants, schools, hospitals, and special events.[17]

28. In its European Food and Nutrition Action Plan 2015-2020, the World Health Organization identified one of its goals as "making the European Region trans fat-free."[18] The European Commission is preparing legislation to ban the use of trans fats in the European Union, with a legislative report on a ban that would cover most of Europe anticipated in June 2015.[19]

---

[13] Cal. Educ. Code § 49431.7; Cal. Health & Saf. Code § 114377.

[14] Andrew Collier, *Deadly Fats: Why Are We still Eating Them?*, The Independent (UK), June 10, 2008.

[15] Mozaffarian, 354 New Eng. J. Med. at 1610; *see also* Steen Stender, *High Levels of Industrially Produced Trans Fat in Popular Fast Food*, 354 New Eng. J. Med. 1650, 1652 (2006).

[16] Coombes, *Trans fats: chasing a global ban*, 343 British Med. J. 5567 (2011).

[17] *Province Restricts Trans Fat in B.C.*, British Columbia Ministry of Healthy Living and Sport Press Release (2009), *available at* http://tinyurl.com/betty15

[18] Regional Committee for Europe, *European Food and Nutrition Action Plan 2015-2020*, 64th session.

[19] Basu, J. *European trans fat report 'could lead to ban'*, Food Navigator.com, April 15, 2015.

C.      **The Artificial Trans Fat in the TF Baking Mixes Causes Cardiovascular Disease**

29.     Trans fat raises the risk of CHD more than any other known nutritive substance.[20]

30.     Removing trans fat equivalent to 2% of total calories from the American diet "would prevent approximately 30,000 premature coronary deaths per year, and epidemiologic evidence suggests this number is closer to 100,000 premature deaths annually."[21]

31.     "10 to 19 percent of CHD events in the United States could be averted by reducing the intake of trans fat."[22]

32.     By raising LDL levels and lowering HDL levels, trans fat causes a wide variety of dangerous heart conditions, including low flow-mediated vasodilation, coronary artery disease, and primary cardiac arrest.

33.     In a joint Dietary Guidelines Advisory Committee Report, the Department of Health and Human Services and the U.S. Department of Agriculture recognized "[t]he relationship between trans fatty acid intake and LDL cholesterol is direct and progressive, increasing the risk of cardiovascular disease."[23]

34.     The American Heart Association warns, "trans fats raise your bad (LDL) cholesterol levels and lower your good (HDL) cholesterol levels. Eating trans fats increases your risk of developing heart disease."[24]

35.     After a review of literature on the connection between the consumption of artificial trans fat and coronary heart disease, the FDA concluded:

---

[20] Mozaffarian, 354 New Eng. J. Med. at 1603.

[21] Alberto Ascherio et al., *Trans Fatty Acids & Coronary Heart Disease*, 340 New Eng. J. Med. 94, 94-8 (1999).

[22] Mozaffarian, 354 New Eng. J. Med. at 1611.

[23] Dep't of Health & Human Serv. & U.S. Dep't of Agric., 2005 Dietary Guidelines Advisory Committee Report, Section 10 (2005).

[24] Am. Heart Ass'n., *Trans Fat Overview*, *available at* http://www.heart.org/HEARTORG/GettingHealthy/FatsAndOils/Fats101/Trans-Fats_UCM_301120_Article.jsp.

> [B]ased on the consistent results across a number of the most persuasive types of study designs (i.e., intervention trials and prospective cohort studies) that were conducted using a range of test conditions and across different geographical regions and populations . . . the available evidence for an adverse relationship between trans fat intake and CHD risk is strong.[25]

36.     The FDA further found "[t]o date, there have been no reports issued by authoritative sources that provide a level of trans fat in the diet . . . below which there is no risk of [Coronary Heart Disease]."[26] Rather, there "is a positive linear trend between trans fatty acid intake and LDL cholesterol concentration, and therefore there is a positive relationship between trans fatty acid intake and the risk of CHD."[27]

37.     A study investigating the impact of trans fatty acids on heart health provides evidence that:

> [E]ven the lower estimates from the effects [of PHO] on blood lipids would suggest that more than 30,000 deaths per year may be due to the consumption of partially hydrogenated vegetable fat. Furthermore, the number of attributable cases of nonfatal coronary heart disease will be even larger.[28]

38.     By taking blood samples from 179 survivors of cardiac arrest and 285 randomly-selected control patients and comparing the top fifth with the bottom fifth of participants by trans fat intake, another study published in the American Heart Association's Circulation found that the largest consumers of trans fat have three times the risk of suffering primary cardiac arrest, even after controlling

---

[25] Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About *Trans* Fat Nutrition Labeling.

[26] 75 Fed. Reg. 76526, 76542 (Dec. 8, 2010).

[27] *Id.*

[28] W.C. Willett et al., *Trans Fatty Acids: Are the Effects only Marginal?* 84 Am. J. Pub. Health 722, 723 (1994).

for a variety of medical and lifestyle risk factors.[29]

39.     Australian researchers observed that heart attack patients possess elevated amounts of trans fat in their adipose tissue compared to controls, strongly linking heart disease with long-term consumption of trans fat.[30]

40.     Another separate study isolated one of the methods by which trans fat causes atherosclerosis, namely by degrading the function of TGF-β, a protein responsible for preventing the development of atherosclerotic lesions.[31]

41.     TGF-β also functions to suppress cancerous tumors. The same scientists suggest that the degradation of TGF-β may be the reason that trans fat consumption is strongly linked to multiple forms of cancer.

**D.     The Artificial Trans Fat in the TF Baking Mixes Causes Type-2 Diabetes**

42.     Artificial trans fat causes type-2 diabetes.[32]

43.     In particular, trans fat disrupts the body's glucose and insulin regulation system by incorporating itself into cell membranes, causing the insulin receptors on cell walls to malfunction, and in turn elevating blood glucose levels and stimulating further release of insulin.

44.     Researchers at Northwestern University's medical school found mice show multiple markers of type-2 diabetes after eating a high trans fat diet for only four weeks.[33]

45.     By the eighth week of the study, mice fed the diet high in trans fat showed a 500%

---

[29] Rozenn N. Lemaitre et al., *Cell Membrane Trans-Fatty Acids and the Risk of Primary Cardiac Arrest*, 105 Circulation 697, 697-701 (2002).

[30] Peter M. Clifton et al., *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction*. 134 J. NUTR. 874, 874-79 (2004).

[31] Chen, C.L. et al., *A mechanism by which dietary trans fats cause atherosclerosis*, J. of Nut. Biochemistry 22(7) 649-655 (2011).

[32] Am. Heart Ass'n., *Trans Fat Overview*.

[33] Sean W. P. Koppe et al., *Trans fat feeding results in higher serum alanine aminotransferase and increased insulin resistance compared with a standard murine high-fat diet*, 297 Am. J. Physiol. Gastrointest Liver Physiol. 378 (2009).

increase compared to the control group in hepatic interleukin-1β gene expression, one such marker of diabetes, indicating the extreme stress artificial trans fat places on the body.[34]

46.     A 14-year study of 84,204 women found that for every 2 percent increase in energy intake from artificial trans fat, the relative risk of type-2 diabetes was increased by 39 percent.[35]

**E.     The Artificial Trans Fat in the TF Baking Mixes Causes Breast, Prostate, and Colorectal Cancer**

47.     Trans fat is a carcinogen which causes breast, prostate, and colorectal cancer.

48.     A 13-year study of 19,934 French women showed 75 percent more women contracted breast cancer in the highest quintile of trans fat consumption than did those in the lowest.[36]

49.     In a 25-year study of 14,916 U.S. physicians, the doctors in the highest quintile of trans fat intake had more than double the risk of developing prostate cancer than the doctors in the lowest quintile.[37]

50.     A study of 1,012 American males observing trans fat intake and the risk of prostate cancer found "[c]ompared with the lowest quartile of total trans-fatty acid consumption, the higher quartiles gave odds ratios (ORs) equal to 1.58," meaning those in the highest quartile are 58% more likely to contract prostate cancer than those in the lowest.[38]

51.     A 600-person study found an 86 percent greater risk of colorectal cancer in the highest

---

[34] *Id.*

[35] Jorge Salmeron et al., *Dietary Fat Intake and Risk of Type 2 Diabetes in Women*, 73 Am. J. Clinical Nutrition 1019, 1023 (2001).

[36] Véronique Chajès et al., *Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study.* 167 Am. J. Epidemiology 1312, 1316 (2008).

[37] Jorge Chavarro et al., *A Prospective Study of Blood Trans Fatty Acid Levels and Risk of Prostate Cancer.*, 47 Proc. Am. Assoc. Cancer Research 95, 99 (2006).

[38] Xin Liu et al., *Trans-Fatty Acid Intake and Increased Risk of Advanced Prostate Cancer: Modification by RNASEL R462Q Variant*, 28 Carcinogenesis 1232, 1232 (2007).

trans fat consumption quartile.[39]

52.    A 2,910-person study found "trans-monounsaturated fatty acids . . . were dose-dependently associated with colorectal cancer risk," which showed "the importance of type of fat in the etiology and prevention of colorectal cancer."[40]

**F.    The Artificial Trans Fat in the TF Baking Mixes Causes Alzheimer's Disease and Cognitive Decline**

53.    Trans fat causes Alzheimer's Disease and cognitive decline.

54.    In a study examining 815 Chicago area seniors, researchers found "increased risk of incident Alzheimer disease among persons with high intakes of . . . trans-unsaturated fats."[41]

55.    The study "observed a strong increased risk of Alzheimer disease with consumption of trans-unsaturated fat."[42]

56.    In a study of 1,486 women with type 2 diabetes, researchers found "[h]igher intakes of . . . trans fat since midlife . . . were [] highly associated with worse cognitive decline . . . ."[43]

57.    The study cautioned "[d]ietary fat intake can alter glucose and lipid metabolism and is related to cardiovascular disease risk in individuals with type 2 diabetes. Because insulin, cholesterol, and vascular disease all appear to play important roles in brain aging and cognitive impairments, dietary fat modification may be a particularly effective strategy for preventing cognitive decline, especially in individuals with diabetes."[44] (citations omitted).

---

[39] L.C. Vinikoor et al., *Consumption of Trans-Fatty Acid and its Association with Colorectal Adenomas*, 168 Am. J. Epidemiology 289, 294 (2008).

[40] Evropi Theodoratou et al., *Dietary Fatty Acids and Colorectal Cancer: A Case-Control Study*, 166 Am. J. Epidemiology 181 (2007).

[41] Martha Clare Morris et al., *Dietary Fats and the Risk of Incident Alzheimer Disease*, 60 Arch. Neurol. 194, 198-99 (2003).

[42] *Id.*

[43] Elizabeth E. Devore et al., *Dietary Fat Intake and Cognitive Decline in Women with Type 2 Diabetes*, 32 Diabetes Care 635 (2009).

[44] *Id.*

58.     Artificial trans fat also damages the brains of men who consume it. A study conducted by UCSD School of Medicine of 1,018 men, mostly younger men, found trans fat consumption to be strongly correlated to impaired memory.[45] The authors of the study, appearing last year in *Circulation*, the American Heart Association's peer-reviewed journal, conclude that "Greater dTFA [dietary trans fatty acid] was significantly associated with worse word memory in adults aged 20-45 years, often critical years for career building."

59.     Performing a word memory test, each additional gram a day of trans fat consumed was associated with an estimate 0.76 fewer words correctly recalled. The authors suggest trans fat's established pro-oxidant effect and damage to cell energy processes is the pathway by which trans fat consumption damages memory ability.[46]

### G.     The Artificial Trans Fat in the TF Baking Mixes Causes Organ Damage

60.     Artificial trans fat damages vital organs, including the heart, by causing chronic systemic inflammation, where the immune system becomes persistently overactive, damages cells, and causes organ dysfunction.[47]

### VI.     PLAINTIFF'S PURCHASES OF THE TRANS FAT BAKING MIXES

61.     Plaintiff Troy Backus repeatedly purchased the Trans Fat Baking Mixes during the Class Period.

62.     Mr. Backus purchased the Trans Fat Baking Mixes from California stores in this District approximately 20 times a year over the past four years.

---

[45] Golomb, B. et al., *Trans Fat Consumption is Adversely Linked to Memory in Working-Age Adults*, J. of Am. Heart Assoc.130:A15572 (2014).

[46] *Id.*

[47] *See* Lopez-Garcia et al., *Consumption of Trans Fat is Related to Plasma Markers of Inflammation and Endothelial Dysfunction,* 135 J. Nutr. 562-66 (2005); *see also* Baer et al., *Dietary fatty acids affect plasma markers of inflammation in healthy men fed controlled diets; a randomized crossover study*, 79 Am. J. Clin. Nutr. 969-73 (2004); Mozaffarian & Clarke, *Quantitative effects on cardiovascular risk factors and coronary heart disease risk of replacing partially hydrogenated vegetable oils with other fats and oils,* 63 Euro. J. of Clin. Nutr. S22-S33 (2009); Mozaffarian et al., *Trans Fatty acids and systemic inflammation in heart failure*, 80 Am. J. Clin. Nutr. 1521-25 (2004).

63.     The most recent of Mr. Backus' purchases occurred in March 2015.

**VII.     THE TF BAKING MIXES UNNECESSARILY CONTAIN PHO AND ARTIFICIAL TRANS FAT**

64.     Defendants' use of PHO in the Trans Fat Baking Mixes is unnecessary. There are several safe substitutes for PHO and artificial trans fat.

65.     Several manufacturers of competing baking mix products have responsibly decided to refrain from adding artificial trans fat to their products. Such brands sold in the United States include Duncan Hines, Pillsbury, Ghirardelli, Immaculate, and Krusteaz.

66.     Although alternative formulations and substitutes for PHO were and are available, Defendants elect not to use them in the TF Baking Mixes in order to increase their profits.

**VIII.     DEFENDANTS' PRACTICES ARE "UNFAIR" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW**

67.     Defendants' practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because their conduct is immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of the conduct, if any, does not outweigh the gravity of the harm to Defendants' victims.

68.     In particular, while Defendants' use of PHO in the Trans Fat Baking Mixes may have some utility in that it allows Defendants to realize higher profit margins than if they used safe alternatives, this utility is small and far outweighed by the gravity of the serious health harm imposed upon consumers.

69.     Defendants' conduct injures competing manufacturers of baking mixes that do not engage in their unfair, immoral behavior, especially given Defendants' large market share and the limited retail shelf space.

70.     Further, Defendants' practices violate public policy as declared by specific constitutional, statutory, or regulatory provisions, including the California Health and Safety Code § 114377 and California Education Code § 49431.7.

71.     Defendants' actions also violate public policy by causing the United States, California, and every other state to pay—via Medicare, Medicaid, Affordable Care Act Exchange subsidies,

13

Veterans' health programs, public employee and retiree health insurance, and other programs—for treatment of trans fat-related illnesses.

72.     Further, the injury to consumers from Defendants' practices is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

## IX.     DEFENDANTS' PRACTICES ARE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW

73.     Defendants' practices as described herein are "unlawful" within the meaning of the California Unfair Competition Law because PHO is not Generally Recognized as Safe (GRAS). Therefore, Defendants' use of PHO renders their products adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C).

74.     The PHO used in the TF Baking Mixes appears nowhere on the FDA's list of the hundreds of substances it considers GRAS.[48]

75.     PHO also fails to meet the fundamental requirement for GRAS status – that the substance is safe. In fact, the FDA has explicitly recognized that there is no safe level of artificial trans fat consumption.

76.     Under the Food Additives Amendment of 1958, which amended the FDCA, all food additives are unsafe unless they (1) fall within a specified exemption to the statute's definition of food additive, or (2) their use is pursuant to FDA approval. Because the PHO used in the TF Baking Mixes do not meet either of these exceptions, they are unsafe and unlawful for use in food and Defendant's use of PHO in the TF Baking Mixes constitutes adulteration under 21 U.S.C. § 342.

## X.     INJURY

77.     Plaintiff lost money as a result of Defendants' conduct because he purchased products that were detrimental to his health and were unfairly offered for sale in violation of California law. Had Defendants not violated the law, Plaintiff would not have been able to purchase the Trans Fat Baking

---

[48] *See* 21 C.F.R. §§ 181, 182, 184 and 186.

1  Mixes.

2      78.    Plaintiff suffered physical injury when he repeatedly consumed Defendants' Trans Fat

3  Baking Mixes, because consuming artificial trans fat in *any* quantity inflames and damages vital organs

4  and increases the risk of heart disease, diabetes, cancer, and death.

5      79.    Like most consumers, Mr. Backus is a busy person and cannot reasonably inspect every

6  ingredient of every food that he purchases for himself and others and he was unaware that the Products

7  were dangerous when he purchased them.

8      80.    Plaintiff is not a nutritionist, food expert, or food scientist, but rather a lay consumer who

9  did not have the specialized knowledge of Defendants pf trans fat. Even today the nature and extensive

10 utilization of artificial trans fats is generally unknown to the average consumer.

11     81.     Plaintiff first discovered Defendants' unlawful acts described herein in April 2015.

12     82.    Plaintiff bought the Trans Fat Baking Mixes seeking products that were safe for him to

13 consume, not ones containing an artificial laboratory-produced fat that causes heart disease and cancer,

14 among other ailments.

## XI.    CLASS ACTION ALLEGATIONS

16     83.    Plaintiff brings this action on behalf of himself and all others similarly situated (the

17 "Class"), excluding Defendants' officers, directors, and employees, and the Court, its officers and their

18 families. The Class is defined as:

19          All persons who purchased in the United States, on or after January 1, 2008 (the

20          "Class Period"), for household or personal use, boxed baking mix products

21          manufactured or distributed by Defendants containing partially hydrogenated oil.

22     84.    Questions of law and fact common to Plaintiff and the Class include:

23          a.  Whether Defendants' conduct constitutes a violation of the unfair prong of

24              California's Unfair Competition Law;

25          b.  Whether Defendants' conduct is a nuisance as defined by Cal. Civ. Code §§ 3479-

26              3493;

27          c.  Whether Defendants' conduct constitutes a violation of the unlawful prong of

28              California's Unfair Competition Law;

d.  Whether Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers;

e.  Whether the slight utility Defendants realize as a result of their conduct outweighs the gravity of the harm the conduct causes to their victims;

f.  Whether Defendants' conduct violates public policy as declared by specific constitutional, statutory, or regulatory provisions;

g.  Whether the injury to consumers from Defendants' practices is substantial;

h.  Whether the injury to consumers from Defendants' practices is outweighed by benefits to consumers or competition;

i.  Whether the injury to consumers from Defendants' practices is one consumers themselves could reasonably have avoided;

j.  Whether Class members are entitled to restitution and, if so, the correct measure of restitution;

k.  Whether Class members are entitled to an injunction and, if so, its terms; and

l.  Whether Class members are entitled to any further relief.

85.  By purchasing and/or using the Trans Fat Baking Mixes, all Class members were subjected to the same wrongful conduct.

86.  Plaintiff's claims are typical of the Class' claims. Plaintiff will fairly and adequately protect the interests of the Class, has no interests that are incompatible with the interests of the Class, and has retained counsel competent and experienced in class litigation.

87.  The Class is sufficiently numerous, as it includes hundreds of thousands of individuals who purchased the TF Baking Mixes throughout the United States during the Class Period.

88.  Class representation is superior to other options for the resolution of the controversy. The relief sought for each Class member is small, as little as one dollar for some Class members. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

89.  Defendants have acted on grounds applicable to the Class, thereby making final injunctive relief or declaratory relief appropriate concerning the Class as a whole.

90.     Questions of law and fact common to the Class predominate over any questions affecting only individual members.

91.     Class treatment is appropriate under Fed. R. Civ. P. 23(a) and both Fed. R. Civ. P. 23(b)(2) and 23(b)(3). Plaintiff does not contemplate class notice if the class is certified under Fed. R. Civ. P. 23(b)(2), which does not require notice. Plaintiff contemplates notice via publication if the class is certified under Fed. R. Civ. P. 23(b)(3) or if the Court determines class notice is required notwithstanding that notice is not required under Fed. R. Civ. P. 23(b)(2). Plaintiff will, if notice is required, confer with Defendants and seek to present the Court with a stipulation and proposed order on the details of a class notice plan.

## XII.     CAUSES OF ACTION

### First Cause of Action

### California Unfair Competition Law (Unfair)

### Cal. Bus. & Prof. Code §§ 17200 et seq.

92.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

93.     Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

94.     The business practices and omissions of Defendants as alleged herein constitute "unfair" business acts and practices in that their conduct is immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to Defendants' victims.

95.     Further, Defendants' practices are unfair because they violate public policy as declared by specific constitutional, statutory, or regulatory provisions, including those policies embodied in the California Health and Safety Code and California Education Code.

96.     Further, Defendants' practices are unfair because the injury to consumers from Defendants' practices is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

97.     In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining

17

Defendants from continuing to conduct business through unfair acts and practices and to commence a corrective advertising campaign. Plaintiff intends to purchase the Products in the future if Defendants ceases their unfair business practices and removes trans fat.

98.   Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Trans Fat Baking Mixes, which were acquired through acts of unfair competition.

**Second Cause of Action**

**Nuisance**

**Cal. Civ. Code §§ 3479-3493**

99.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

100.   The public has a common right to a safe food supply and a common interest in ensuring that only safe foods are allowed for sale.

101.   Artificial trans fat is a dangerous ingredient that is harmful when consumed by humans in any amount. Defendants actively promote and sell their Trans Fat Baking Mixes, which contain dangerous amounts of trans fat. Defendants sell their TF Baking Mixes to the public at large.

102.   Defendants' actions complained of herein have created a harmful condition that is injurious to the health of the public and affects a substantial number of people.

103.   These acts substantially and unreasonably interfere with the public's interests in having only safe, uncontaminated foods available for purchase, cause an unreasonable inconvenience to avoid, and are a menace to the public health and to the safety of children.

104.   Defendants are liable in public nuisance because by promoting and selling their Trans Fat Baking Mixes that contain dangerous amounts of trans fat, they have created a dangerous condition that interferes with the public interest.

105.   Plaintiff suffered specific physical and emotional harm from Defendants' conduct when he consumed Defendants' TF Baking Mixes. Plaintiff continues to suffer emotional harm from knowing that he unwittingly injured himself and his friends, family and co-workers through the consumption of the TF Baking Mixes.

106.   In accordance with Cal. Civ. Code § 3491, Plaintiff seeks an order abating Defendants'

18

injurious practices, and enjoining further acts.

**Third Cause of Action**

**Breach of Implied Warranty of Merchantability**

107.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

108.    Defendants are merchants with respect to goods of this kind, which were sold to Plaintiff and other consumers, and there was in the sale to Plaintiff and other consumers an implied warranty that those goods were merchantable.

109.    However, Defendants breached that warranty implied in the contract for the sale of goods in that the Trans Fat Baking Mixes are not safe for human consumption as set forth in detail herein above.

110.    As a result of Defendants' conduct, Plaintiff did not receive goods as impliedly warranted by Defendants to be merchantable.

111.    As a proximate result of this breach of warranty by Defendants, Plaintiff and other consumers have been damaged.

112.    Plaintiff also seeks damages for the injury he suffered from Defendants' breach of the implied warranty.

**Fourth Cause of Action**

**California Unfair Competition Law (Unlawful)**

113.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

114.    Defendants have made and distributed, in interstate commerce and in this District, products that contain unlawful food additives. The TF Baking Mixes were placed into interstate commerce by Defendants and sold throughout the country and in this District.

115.    Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

116.    Defendants' conduct is "unlawful" because it violates the Federal Food, Drug, and Cosmetic Act ("FDCA"), specifically, the Food Additives Amendment of 1958, which deems a food

19

additive unsafe unless it has met two exceptions, neither of which the PHO used in the TF Baking Mixes has met. 21 U.S.C. §§ 348, 342.

117.   Defendants' conduct further violates The California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 110100, which adopts all FDA regulations as state regulations. Defendants' conduct also violates the following sections of the Sherman Law:

• § 110100 (adopting all FDA regulations as state regulations);

• § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

118.   The use of artificial trans fat in the TF Baking Mixes thus constitutes a violation of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

119.   Plaintiff suffered injury in fact and lost money or property as a result of Defendants 'unlawful acts: he was denied the benefit of the bargain when he decided to purchase the TF Baking Mixes over competing products that are less expensive and/or contain no artificial trans fat.

120.   Had Plaintiff been aware of Defendants' unlawful tactics, he would not have purchased the TF Baking Mixes.

121.   Defendants' unlawful acts allowed them to sell more units of the TF Baking Mixes than they would have otherwise, and at a higher price.

122.   In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

123.   Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the TF Baking Mixes, which were acquired through acts of unfair competition.

## XIII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Defendants as follows:

A.   An order confirming that this class action is properly maintainable as a nationwide class action as defined above, appointing Plaintiff and his undersigned counsel to represent the Class, and requiring Defendants to bear the cost of class notice;

B.     An order requiring Defendants to pay restitution to Plaintiff and the Class so that they may be restored any money which may have been acquired by means of any unfair practice;

C.     An order requiring Defendants to disgorge any benefits received from Plaintiff and/or unjust enrichment realized as a result of unfair practices;

D.     An order declaring the conduct complained of herein violates the Unfair Competition Law;

E.     An order requiring Defendants to cease and desist their unfair practices;

F.     An order requiring Defendants to engage in a corrective advertising campaign;

G.     An order abating Defendants' injurious practices;

H.     An award of damages, pre-judgment, and post-judgment interest;

I.     An award of attorney fees and costs; and

J.     Such other and further relief as this Court may deem just, equitable, or proper.

## XIV.   <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on his claims for damages.


DATED: April 30, 2015                Respectfully Submitted,

<u>/s/ Gregory S. Weston</u>
**THE WESTON FIRM**
GREGORY S. WESTON
PAUL K. JOSEPH
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:     (619) 798-2006
Facsimile:      (480) 247-4553

***Counsel for Plaintiff and the Proposed Class***