1 | **PERKINS COIE LLP**
DAVID T. BIDERMAN (No. 101577)
2 | dbiderman@perkinscoie.com
1888 Century Park E., Suite 1700
3 | Los Angeles, CA  90067-1721
Telephone: 310.788.9900
4 | Facsimile:  310.843.1284

5 | CHARLES C. SIPOS (*Pro Hac Vice*)
csipos@perkinscoie.com
6 | 1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
7 | Telephone: 206.359.8000
Facsimile:  206.359.9000

JOSHUA A. REITEN (No. 238985)
9 | jreiten@perkinscoie.com
505 Howard Street, Suite 1000
10 | San Francisco, CA  94105
Telephone: 415.344.7000
11 | Facsimile:  415.344.7050

12 | Attorneys for Defendants GENERAL MILLS, INC.
and GENERAL MILLS SALES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TROY BACKUS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MILLS, INC. and GENERAL MILLS SALES, INC.,<br><br>Defendants. | Case No. 15-cv-01964 TEH<br><br>**STATEMENT OF RECENT DECISION** |

Pursuant to Local Rule 7-3(d)(2), Defendants submit the following recent decision in support of their pending motion to dismiss under Rule 12(b)(6): *Guttmann v. Nissin Foods (U.S.A.) Company, Inc.,* No. 15-cv-00567-WHA (N.D. Cal. Aug. 14, 2015) (Dkt. 59).

DATED: August 16, 2015

Respectfully,

**PERKINS COIE LLP**

By: /s/ *Joshua A. Reiten*
      JOSHUA A. REITEN

Attorneys for Defendants GENERAL MILLS, INC. and GENERAL MILLS SALES, INC.

-1-

STATEMENT OF RECENT DECISION
Case No. 15-cv-01964 TEH

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VICTOR GUTTMANN, on behalf of himself and all others similarly situated,

    Plaintiff,

  v.

NISSIN FOODS (U.S.A.) COMPANY, INC.,

    Defendant.

No. C 15-00567 WHA

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION

In this putative class action involving instant noodles, defendant moves to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6). A prior order dismissed several claims pursuant to Rule 12(b)(6). For the reasons stated below, defendant's motion to dismiss is **GRANTED**.

## STATEMENT

Our plaintiff, Victor Guttmann, seeks to eradicate artificial trans-fat from food and, to that end, has sued five different manufacturers over artificial trans-fat. In this case, Guttmann goes after instant noodle products manufactured and sold by defendant Nissin Foods (U.S.A.) Company, Inc. Nissin's noodle products contained partially-hydrogenated oil, a food additive derived from low-cost oils (Amd. Compl. ¶¶ 10–15, 58).

Guttmann's complaint cites numerous studies that have linked the consumption of artificial trans-fat to increased risk of certain medical conditions such as cardiovascular heart

disease, diabetes, breast, prostate, and colorectal cancer, Alzheimer's disease, and organ damage. In particular, the complaint alleges "[t]here is 'no safe level' of artificial trans fat intake" and "any incremental increase in trans fat increases risk of [cardiovascular heart disease]" (*id.* ¶¶ 16–56). The use of partially-hydrogenated oils was not required by law, and while this motion was pending, the Food and Drug Administration issued a final determination that partially-hydrogenated oils are no longer "generally recognized as safe." 80 Fed. Reg. 34650 (June 17, 2015). Pursuant to that determination, manufacturers must remove partially-hydrogenated oils from their products within three years.

Although all of Nissin's noodle products contained partially-hydrogenated oils (and listed those oils among the ingredients of those products), the nutrition-facts panel on each of the product labels included the indication "Trans Fat: 0g." FDA regulations do not (and did not) require trans-fat content to be declared in the nutrition-facts panel on a product label, however, "[i]f the serving contains less than 0.5 gram[s of trans-fat], the content, when declared, shall be expressed as zero." 21 C.F.R. 101.9(c)(2)(ii).

Guttmann claims that he assumed all of Nissin's noodle products were safe to consume, and he notes that several products similar to Nissin's noodles do not contain artificial trans-fat (Amd. Compl. ¶¶ 76-84; Appendix B). He also claims he was economically harmed because he was deprived of the benefit of his bargain, having thought he got safe food when, in fact, he got unsafe food.

Guttmann has been a plaintiff in three prior lawsuits regarding artificial trans-fat and food labeling. *Chacanaca v. The Quaker Oats Company*, No. 10-0502 (N.D. Cal.) (Judge Richard Seeborg); *Eileen Peivani v. Hostess Brands, Inc.*, No 10-02303 (C.D. Cal.) (Judge Consuelo Marshall); *Guttmann v. Ole Mexican Foods, Inc.*, No 14-04845 (N.D. Cal.) (Judge Haywood Gilliam). Since commencing this action he has filed an additional lawsuit, *Guttmann v. La Tapatia Tortilleria, Inc.*, No 15-02042 (Judge Susan Illston).[1]

---

[1] Guttmann argues that his litigation history is not contained within the pleadings, and so cannot be considered in this order. Although allegations of fact in a complaint are accepted as true for the purposes of adjudicating a motion to dismiss, such allegations may be rejected if contradicted by matters properly subject to judicial notice. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Accordingly,

A prior order dismissed Guttmann's claims that pertained to product labeling as well as his claim for public nuisance (Dkt. No. 53). Guttmann's claims for violation of the unfair prong of the California Unfair Competition Law, California Business & Professions Code Section 17200, *et seq.*, and for breach of the implied warranty of merchantability are the only claims remaining.

Nissin moves to dismiss Guttmann's complaint for lack of standing and failure to state a claim. Following full briefing and oral argument, the parties were ordered to conduct limited discovery regarding Guttmann's alleged increased risk of medical harm and his knowledge that all foods containing partially-hydrogenated oils, including Nissin's noodles, contained artificial trans-fat. Both parties filed supplemental briefs detailing that limited discovery, although Guttmann's was untimely.

**ANALYSIS**

In his deposition taken in the limited discovery ordered for the purpose of this motion, Guttmann admitted facts that were already clear from his pleadings in his prior complaints, namely, that as of 2010 when he commenced his litigation campaign, he was aware that (i) products could be labeled "0g Trans Fat" if they contained less than 0.5 grams of trans-fat, (ii) partially-hydrogenated oils contained artificial trans-fat, (iii) he could check the ingredients labels on food products to see if they contained partially-hydrogenated oils, and (iv) artificial trans-fat was linked to health risks (Guttmann Dep. at 40–48). Further, Guttmann admitted that he actually *did* inspect some product labels to discern whether they contained dangerous trans-fats (*id.* at 56).

It is undisputed that Nissin listed partially-hydrogenated oils among the ingredients on all of its product labels, and judicial notice has already been taken of the contents of the product labels (Dkt. No. 53). Thus, this order finds Guttmann was keenly aware of the alleged injury he might suffer by eating Nissin's noodles, and he knew he could have avoided any such injury caused by Nissin by simply checking the product label. This fact is fatal to Guttmann's remaining claims.

---

Guttmann's litigation history is appropriate to consider.

### 1. UNFAIR PRONG OF SECTION 17200.

An act or practice cannot be unfair within the meaning of Section 17200 if it caused an "injury the [plaintiff] could reasonably have avoided." *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006). As discussed above, since commencing his litigation campaign in 2010, Guttmann could reasonably have avoided any injury based on Nissin's use of artificial trans-fat by reading the nutrition-facts panel and deciding not to purchase or consume them based on the presence of partially-hydrogenated oil. Guttmann alleges that he purchased and consumed Nissin's noodles prior to becoming aware of the alleged dangers of partially-hydrogenated oil and artificial trans-fat in 2010, but any claims based on those purchases are barred by the four-year statute of limitations. Cal. Bus. & Prof. Code § 17208. Thus, Guttmann's claim under the unfair prong of Section 17200 must be **DISMISSED**.

### 2. IMPLIED WARRANTY OF MERCHANTABILITY.

Guttmann also claims that he suffered a financial harm by purchasing Nissin's noodle products, which he argues were not "fit for the ordinary purposes for which such goods are used," in breach of the implied warranty of merchantability. Cal. Com. Code § 2314(2)(c); Cal. Civ. Code § 1791.1(a)(2). To breach the implied warranty of merchantability, a product must lack "even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003). If a buyer "has examined the goods or the sample model as fully as he desired or has refused to examine the goods," however, "there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him." Cal. Com. Code § 2316. Accordingly, even if Guttmann could claim that Nissin's noodles were unfit for human consumption due to the presence of artificial trans-fat, Guttmann could have easily discovered that defect by reading the ingredients, which undisputedly listed partially-hydrogenated oils.

Guttmann cites *Reid v. Johnson & Johnson*, 780 F.3d 952, 958-59 (9th Cir. 2015), for the contention that the inclusion of partially-hydrogenated vegetable oil on an ingredient list does not have a "curative effect" for a manufacturer's conduct that could give rise to liability, because a "typical consumer" would not understand that ingredient includes artificial trans-fat.

This order need not determine whether a typical consumer could have a claim for breach of the implied warranty of merchantability because Guttmann is not a typical consumer but is a self-appointed inspector general roving the aisles of our supermarkets. He continues on a five-year litigation campaign against artificial trans-fat and partially-hydrogenated oil and has admitted that he has inspected products for those ingredients before. Guttmann's apparent refusal to inspect Nissin's noodles for an alleged defect despite his extensive knowledge of and concern for this particular ingredient is fatal to his claim for breach of the implied warranty of merchantability.

Guttmann's argument that he purchased Nissin's noodles prior to becoming aware of the alleged dangers of partially-hydrogenated oil and artificial trans-fat in 2010 fails on this claim as well, as the statute of limitations for breach of the implied warranty of merchantability is also four years. Cal. Com. Code § 2725.

Accordingly, Guttmann's claim for breach of the implied warranty of merchantability must be **DISMISSED**.

## CONCLUSION

Nissin's motion to dismiss the remaining claims under Rule 12(b)(6) is **GRANTED**. The sworn evidentiary record developed through limited discovery demonstrates that no amendment to the pleadings can overcome the fact that plaintiff could have avoided any injury caused by defendants' use of artificial trans-fat in its noodles. Thus, leave to amend will be not be allowed due to futility. This case is now ready for the court of appeals.

**IT IS SO ORDERED.**

Dated: August 14, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5