UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY BACKUS,<br><br>  Plaintiff,<br><br> v.<br><br>GENERAL MILLS, INC., et al.,<br><br>  Defendants. | Case No. 15-cv-01964-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 49 |

Plaintiff Troy Backus brings this putative class action against defendants General Mills, Inc. and General Mills Sales, Inc. (collectively "General Mills") for the use of trans fats in the form of partially hydrogenated oil (PHO) in their baking mix products. Compl. ¶¶ 4-7 [Dkt. No. 1]. General Mills moves to dismiss Backus's remaining claims under the unlawful and unfair prongs of the California Unfair Competition Law (UCL), arguing that they are preempted by the federal Food, Drug, and Cosmetic Act (FDCA) and Section 754 of the Consolidated Appropriations Act. Because conflict preemption bars both of Backus's claims, I grant General Mills' motion to dismiss. Backus's remaining claims are dismissed with prejudice.

**BACKGROUND**

In 2015, Backus filed a putative class action complaint against General Mills challenging its practice of selling baking mixes that include PHOs. Complaint ¶ 7 [Dkt. No. 1]. He initially brought claims for public nuisance, breach of an implied warranty of merchantability, and claims under the "unlawful" and "unfair" prongs of California's Unfair Competition Law ("UCL").

On November 8, 2013 the federal Food and Drug Administration ("FDA") "tentatively determined" that PHOs are not "generally recognized as safe" ("GRAS"). 78 Fed. Reg. 67169-01, 67170 (Nov. 8, 2013). GRAS is a term of art describing a food product that can be sold without

premarket approval. The FDA stated that PHOs had previously been treated as GRAS by the food industry and that it was not aware of any formal sanction or approval of PHOs by the United States Department of Agriculture ("USDA"). *Id.* at 6717. After a period of public comment, the FDA "made a final determination that there is no longer a consensus among qualified experts that partially hydrogenated oils . . . are generally recognized as safe (GRAS) for any use in human food." 80 Fed. Reg. 34650 (June 17, 2015). The FDA "encourage[d] submission of scientific evidence as part of food additive petitions" to determine whether PHOs could be used in small amounts and set the compliance date with its determination on June 18, 2018 (the "compliance date") "to allow time for such petitions and their review." *Id.* at 34651-53.

## I. Judge Henderson's Previous Order and Primary Jurisdiction Stay

On a previous motion to dismiss, the Honorable Thelton Henderson, from whom I inherited this case, dismissed Backus's public nuisance and implied warranty of merchantability claims with prejudice. Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Defendants' Motion to Stay Case [Dkt. No. 33]. Judge Henderson found that Backus had stated an "unlawful" UCL claim, reasoning that there were sufficient allegations that General Mills had violated California's Sherman Act, which prohibits the sale of adulterated food. *Id.* at 21-23. He also found that Backus had stated an "unfair" UCL claim, as he had alleged a Sherman Act violation, identified several harms related to trans fat use that could be avoided in a cost-effective way, and because General Mills had not submitted a meritorious argument regarding the utility of the practice. *Id.* at 23-25.

Judge Henderson ultimately chose to stay Backus's remaining claims as the issues raised were of first impression and the FDA had only revoked the GRAS status of PHOs but had not found them unsafe. *Id.* at 29-33. As the FDA would review the question of whether small amounts of trans fats could be lawfully used as a food additive before June 2018, Judge Henderson granted General Mills' motion to stay under the primary jurisdiction doctrine. *Id.*

## II. The Section 754 Stay

While the primary jurisdiction stay was still in effect, the Consolidated Appropriations Act was signed into law on December 18, 2015. Consolidated Appropriations Act, ("Section 754")

2

2016, Pub. L. No. 114–113, § 754, 129 Stat 2242, 2284 (2015). Section 754, consistent with the FDA's final determination, stated that PHOs would not be considered unsafe of adulterated under the FDCA until the June 18, 2018, compliance date. *Id.*

On March 12, 2018, I partially lifted the stay for the limited purpose of allowing defendants to file a motion to dismiss based on preemption under Section754. [Dkt. No. 48]. After briefing was submitted, oral argument was held, and the motion was taken under submission, I deferred ruling on the motion pending appeal in *Hawkins v. Kroger Co.*, No. 16-55532 (9th Cir. argued Dec. 7, 2017), as I believed that the Ninth Circuit would likely decide the preemption issues raised in this action. [Dkt. No. 54]. The Ninth Circuit ultimately decided not to rule on the issue of preemption as it was not the basis of the trial court's order on appeal. *Hawkins v. Kroger Co.*, 906 F.3d 763, 772-773 (9th. Cir. 2018). In a similar case, the Ninth Circuit also assumed, without deciding, that the plaintiff's claims were not preempted but that the plaintiff had nevertheless failed to state a claim. *Hawkins v. AdvancePierre Foods, Inc.*, 733 Fed.Appx. 906 (2018).

Now that *Hawkins* and *AdvancePierre* have been decided, the parties have filed a joint status report with their respective positions. [Dkt. No. 55]. General Mills asks that I continue the stay pending the Ninth Circuit's ruling in *McGee v. Diamond Foods*, No. 17-55577 (9th Cir. 2017), another case where the parties have also briefed the issue of Section 754's preemptive effect. *Id.* at 1-2. In the alternative, General Mills asks for the opportunity to file supplemental briefing to address the *AdvancePierre* and *Hawkins* rulings. *Id.* Backus requests that I lift the stay and rule on General Mills' motion to dismiss. *Id.* at 4-5.

I agree with Backus that it is time to adjudicate this motion. The Ninth Circuit chose not to address Section 754's preemptive effect in either *AdvancePierre* and *Hawkins*. Further, the order under review in *McGee* did not turn on conflict preemption and I do not expect the Ninth Circuit to address it for the same reasons they did not in *Hawkins*. Additionally, I do not believe supplemental briefing on *AdvancePierre* or *Hawkins* will be helpful as the Ninth Circuit declined to address the issue at the heart of General Mills' motion to dismiss.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the counterclaimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a claim must be supported by facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).

In deciding whether a claim has been stated upon which relief can be granted, the court accepts the allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

General Mills argues that conflict preemption bars Backus's two remaining UCL claims. It reasons that Section 754 dictates that foods containing PHOs may not be "deemed unsafe" or "adulterated" until the June 2018 compliance date. Motion to Dismiss [Dkt. No. 49] 6-7.

Conflict preemption applies when it is impossible to comply with both federal and state law or when state laws stand as obstacles to accomplishing federal objectives. *See Chicanos Por*

*La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009); *see also Geier v. American Honda Motor Co., Inc*., 529 U.S. 861, 873–75 (2000) (holding conflict preemption applies to lawsuits that "prevent or frustrate the accomplishment of a federal objective"). A court must look to the language of the statute and the overall statutory purpose to determine whether it is preempted. *Ting v. AT&T*, 319 F.3d 1126, 1136 (9th Cir. 2003).

Congress, in passing the Consolidated Appropriations Act, explicitly expressed the intent that food containing PHOs are not considered unsafe or adulterated until June 18, 2018. Section 754 states that PHOs may not be considered unsafe or adulterated under the FDCA until June 18, 2018:

> No partially hydrogenated oils as defined in the order published by the Food and Drug Administration in the Federal Register on June 17, 2015 (80 Fed. Reg. 34650 et seq.) shall be deemed unsafe . . . and no food that is introduced or delivered for introduction into interstate commerce that bears or contains a partially hydrogenated oil shall be deemed adulterated . . . by virtue of bearing or containing a partially hydrogenated oil until the compliance date as specified in such order (June 18, 2018).

Consolidated Appropriations Act, 2016, PL 114–113, December 18, 2015, 129 Stat 2242 (2015). Backus's claims are premised entirely on the notion that PHOs were unsafe and adulterated before the compliance date. *See* Compl. ¶¶ 73, 75, 76, 82.

Several courts in this district have held that claims premised on allegations that PHOs were unsafe and adulterated before the compliance date would create an obstacle to the objectives of both the FDA and Congress. *See*, *e.g.*, *Walker v. Conagra Foods, Inc.*, 15-CV-02424-JSW, Dkt. No. 55 (N.D. Cal. March 31, 2017); *Backus v. Biscomerica Corp*., No. 16-cv-03916-HSG, 2017 WL 1133406 (N.D. Cal. March 27, 2017); *Backus v. Conagra Foods*, No. C 16-00454 WHA, 2016 WL 3844331 (N.D. Cal. July 15, 2016); *Backus v. Nestle*, 167 F. Supp. 3d 1068 (N.D. Cal. 2016)(MMC).

In a similar lawsuit filed by Backus against Nestle, the Honorable Maxine Chesney found that Backus's claims challenging Nestle's use of PHOs in its products "effectively negate[d]" the FDA's order setting a compliance date in 2018 and, therefore, were obstacles to the objectives of the FDA in adopting the compliance date. *Nestle*, 167 F. Supp. 3d at 1073-74. The Honorable

William Alsup, Haywood Gilliam, and Jeffrey White each reached the same conclusion. *See Biscomerica Corp.*, 2017 WL 1133406, at *4 ("The Court finds that Plaintiff's interpretation of California's Sherman Law—as requiring an immediate ban on PHO—would conflict with the FDA and Congress's decision not to deem foods containing PHO unsafe or adulterated until June 18, 2018."); *Conagra Foods*, 2016 WL 3844331, at *4 ("Backus's Section 17200 claims, which would impose an immediate prohibition on the use of partially-hydrogenated oils in all foods under all circumstances, would stand as an obstacle to the fulfillment of the FDA's objectives, as embodied in its regulatory scheme setting a compliance date for 2018"); *Walker*, 15-CV-02424-JSW at 3-5 (agreeing with and applying the reasoning in *Biscomerica Corp* and *Conagra Foods*). I agree with my colleagues and similarly find that Backus's UCL claims are barred by the doctrine of conflict preemption: Congress has been clear that no liability can arise for use of PHOs before the June 18, 2018 compliance date.

In opposition, Backus contends that: (1) General Mills has not met its burden of overcoming the presumption against federal preemption, (2) Section 754 regulates the FDA and not the states, (3) Congress is capable of passing clear FDCA preemption provisions when it intends to do so, (4) General Mills's cited authority impermissibly relies on the legislative history of Section 754,[1] and (5) Section 754, even if preempted California law, is not retroactive and all of the claims in this action predate its passage. Opposition [Dkt. No 50]. These arguments lack merit.

**A. General Mills Successfully Rebuts the Presumption Against Preemption**

Backus asserts that General Mills has failed to overcome the presumption against federal preemption. There is a presumption against preemption when the inquiry involves a field that "has been traditionally occupied by the States." *De Buono v. NYSA–ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997) (quotations and citations omitted). A "clear and manifest purpose of Congress" can rebut such presumption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, (1996). The party who asserts a state law is preempted bears the burden of demonstrating such

---

[1] Because I did not rely on the legislative history that, in Backus's view, is impermissible, I do not address this argument.

6

preemption. *See Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013). As discussed above, setting the compliance date for June 18, 2018 represents a "clear and manifest purpose of Congress" that the use of PHOs in food would only become illegal upon this date. General Mills has successfully rebutted the presumption against preemption.

Backus contends that because the text of Section 754 "says nothing about the states or state law," it is plausible that it does not preempt California law, which forecloses preemption under *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) ("[E]ven if its alternative [reading] were just as plausible as our reading of that text—we would nevertheless have a duty to accept the reading that disfavors pre-emption."). Oppo. at 11. That Section 754 does not explicitly mention states or state law does not make it per se plausible that it does not preempt California law. In fact, there is no plausible reading of Section 754, in which Congress set a compliance date for the legality of PHOs based on its best judgment for consumers and businesses, that allows for imposing liability on the use of PHOs before the compliance date.

Backus further argues that "a higher state-law standard for foods, that renders some foods legal under federal law but illegal under state law, does not meet the high standard for conflict preemption." *Id.* at 11. The cases on which he relies are inapposite. For instance, in *Ass'n des Eleveurs de Canards d'Oies Quebec v. Becerra*, 870 F.3d 1140, 1153 (9th Cir. 2017), the Ninth Circuit considered whether the Poultry Products Inspection Act (PPIA), which ensures that poultry product are "wholesome, not adulterated, and properly marked, labeled, and packaged," 21 U.S.C. § 451, preempted a California statute banning the in-state sale of foie gras produced by force-feeding ducks and geese. In holding that the PPIA did not preempt California's law, the court noted that the plaintiffs failed to show that the California law stands as an obstacle to the PPIA's objectives of ensuring that poultry products are "wholesome, not adulterated, and properly marked, labeled, and packaged." *Id.* Further, the court noted that the PPIA most directly regulates slaughterhouses, whereas the California statute bans "what California finds to be a cruel feeding practice that occurs far away from the official establishments that the PPIA regulates." *Id.* The California statute was, therefore, not an obstacle to the objectives of PPIA.

The situation here is quite different. Backus's claims deal with regulation of exactly the

7

same products under both state and federal law and seeks to render PHOs illegal before the compliance date despite the FDA's intentional setting of said compliance date in June 2018. This conflict is significantly more direct than the attenuated connection between the PPIA, which regulates slaughterhouses, and California's statute banning the in-state sale of foie gras produced by force-feeding ducks and geese.

Backus's citation to *Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d 326, 334 (5th Cir. 2007) is similarly unpersuasive. There, the Fifth Circuit addressed whether the Federal Meat Inspection Act (FMIA) preempted the Texas Agriculture Code Chapter 149, which prohibits the sale of horsemeat. In finding that there was no conflict preemption between the FMIA and Chapter 149, the court noted that it was not physically impossible to comply with both statutes and that Chapter 149 did not stand as an obstacle to the FMIA's objectives of "assuring that meat and meat food products distributed to [consumers] are wholesome, not adulterated, and properly marked, labeled and packaged." *Id.* This holding does not help Backus because, under Backus's reading of the UCL, it would be impossible to comply with the FDA's mandate that the use of PHOs would only become illegal upon the compliance date.

Finally, in *Reid v. Johnson & Johnson*, 780 F.3d 952, 962-63 (9th Cir. 2015), the Ninth Circuit considered whether the FDA's labeling requirements permitted companies to claim a product was "trans fat free," even if it contained low levels of trans fats. As Judge Gilliam observed, *Reid* "does not stand for the broad proposition that federal law cannot preempt state law food regulations." *Biscomerica Corp.*, 2017 WL 1133406, at *3 n.2. Rather, the court found only that an FDA warning letter lacked preemptive effect because it was not the sort of agency pronouncement that Congress intended to carry the "force of law" and thus was not entitled to *Chevron* deference. *Reid*, 780 F.3d at 964. Section 754 is not an agency warning letter, it is an act of Congress that is directly on point. Backus's reliance on *Reid* is misplaced.

**B. Section 754 Regulates Both the Federal and State Governments**

Backus argues that the language of the Section 754 demonstrates that Congress intended that it only regulate the FDA and not the states, thus lacking preemptive effect. In his view, Section 754 speaks only about the regulatory structure of the FDCA and only prohibits

8

enforcement by the FDA and no other entity. Oppo. at 12. His reading of the statute is illogical, inconsistent with how he has brought his claims, and has been rejected by a number of courts.

Backus tethers his unlawful UCL claim to General Mills' alleged violation of the FDCA and the California Sherman Food, Drug, and Cosmetic Law, which adopts all FDA regulations as state regulations. Even taking Backus's reading as correct, the very fact that the California Sherman Food, Drug, and Cosmetic Law incorporates all FDA regulations would effectively preempt his claim. *See Biscomerica*, 2017 WL 1133406, at \*3 ("the Sherman Law largely tracks federal law, prohibiting the sale or advertisement of 'adulterated' food and food additives" and holding that Section 754 bars state law claims).

Backus further contends that because the FDA's June 2015 Final Determination "regulation expressly discusses preemption, specifically [stating] that the FDA was aware of even stricter state and local laws on preemption, and did not believe they conflicted with its more relaxed policy of enforcement discretion and a three year delay before it enforced compliance," his claims are not preempted. Oppo. at 13 (citing *Wyeth v Levine,* 555 U.S. at 575 (2009) ("The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them.")). This argument has been previously rejected by several courts in this district. *See Biscomerica*, 2017 WL 1133406, at \*4 (rejecting Backus's argument that FDA's Final Determination foreclosed preemption because FDA did not take position on preemption and Section 754 is clearly preemptive); *ConAgra Foods*, 2016 WL 3844331, at \*4 (same); *Nestle*, 167 F. Supp. 3d at 1073 (same). The FDA has only asserted that it was not "tak[ing] a position regarding the potential for implied preemptive effect of this order on any specific state or local law" and that the preemptive effect of its final determination on state laws would require a case-by case-analysis. 80 Fed. Reg. 34650-01, 34655. Nothing in the FDA's June 2015 Final Determination forecloses preemption of state law.

**C. Clear FDCA Preemption**

Backus argues that when Congress intends to preempt state law, it expressly does so in a clear manner. This argument focuses on express preemption and ignores conflict preemption. *See*

9

*Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) ("Even without an express provision for preemption, we have found that state law must yield to a Congressional Act . . . [where] the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."). Under this argument, the doctrine of conflict preemption would cease to exist.

**D. Retroactivity**

Backus contends that because this case was filed eight months before the passage of Section 754, Section 754 does not apply to this action. Oppo. 17-18. There is a "presumption against retroactive legislation . . . deeply rooted in our jurisprudence." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). But a "statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law." *Id.* at 269. If Congress has expressly prescribed a statute's proper reach, there is no need to resort to judicial default rules. *Id.* at 280. In enacting Section 754, Congress has done precisely that. By setting the June 2018 compliance date, the FDA and Congress established the reach of the statute to capture conduct before and after the compliance date. Simply put, before June 18, 2018, the use of PHOs in food was permissible; after June 18, 2018, the use of PHOs in food would violate the FDCA. Accordingly, Section 754 is clear and the use of PHOs in food before June 2018, the entirety of the time period covered by the complaint, is not unlawful.

**CONCLUSION**

Because conflict preemption bars Backus's claims, I grant General Mills' motion to dismiss. Backus's claims are dismissed with prejudice and judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: December 10, 2018

William H. Orrick
United States District Judge

10